CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 5 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOYLE KENT TERRY, Petitioner, | Civil Action No. 7:06-cv-00246 |
| v. | MEMORANDUM OPINION |
| GEORGE M. HINKLE, CHIEF WARDEN, Respondent. | By: Hon. James C. Turk<br>Senior United States District Judge |

Petitioner Doyle Kent Terry, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Terry is currently confined pursuant to a final order issued by the Circuit Court of the City of Danville on March 29, 2004, convicting Terry of felony eluding police, driving after having been declared a habitual offender, second offense, hit and run with damage to attended property, and driving while under the influence of alcohol or drugs, second offense. The court sentenced Terry to serve five years imprisonment on each of the first two charges and twelve months imprisonment on each of the latter two charges, with six months of the hit and run sentence suspended. Respondent filed a motion to dismiss, and petitioner responded, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motion to dismiss must be granted.

I.

On November 16, 2003, Officer Travis Giles was watching the stop sign at the intersection of Bonner Avenue and Taylor Drive in Danville, Virginia.[1] Giles saw a Chevy S-10 pick-up truck roll through the stop sign, so he pulled in behind the truck and turned on his blue light to pull the vehicle over. The truck turned onto College Park Drive towards North Carolina, traveling on the wrong side of the road, and side-swiped another vehicle. Giles continued in pursuit and saw the truck go through another stop sign without stopping. The truck then traveled into North Carolina, going back and forth, in and out of the wrong lane, passing cars at speeds up to sixty-five miles per

---

[1] The court takes this sequence of facts from the transcript of testimony presented in support of Terry's guilty pleas on March 4, 2004, in the Danville Circuit Court. (Tr. 15-39).

1

hour. It struck an SUV, turning it sideways in front of Giles' vehicle, causing an accident. As a result of the accident, the driver of the SUV was killed and Giles was seriously injured. Other cars were also involved in the accident, and the driver of one of those vehicles died of a heart attack at the scene. Giles saw the truck stop fifty yards up the road and saw its driver, wearing a red jacket, running from the scene. At Giles' behest, other officers chased the man in the red jacket (later identified as Terry) for sixty to seventy yards and had to fight and mace him in order to apprehend him. He had a very strong odor of alcohol about him. As officers brought Terry back to the accident scene, he stated, "Are they all dead? If they not [sic] why don't you go and kill them?" (Tr. 49).

The case was set for trial on March 4, 2004, but Terry decided to plead guilty. During a plea colloquy, Terry informed the court that he was pleading guilty freely and voluntarily; that he had discussed the charges with his attorney and understood the charges, the maximum penalties of up to twelve years imprisonment that he faced, and the consequences of his pleas; that he had completed eleventh grade in school; that no one had promised him anything in connection to the guilty pleas; and that he was entirely satisfied with the services of his attorney. The court then heard evidence in support of the pleas and as to sentencing. In court, in addition to testimony about the events of November 16, 2003, the prosecution played two police videotapes of the accident. Terry's prior criminal record included assault and battery on a police officer, possession of a sawed-off shotgun, aiding and abetting in the sale of cocaine, felony eluding, assault and battery with a deadly weapon on a government official, and three pages of other offenses. Terry had also previously been on probation. Terry's attorney asked the court to consider Terry's low IQ scores and mental health problems in calculating the sentence. Counsel told the court that Terry had been diagnosed as being schizophrenic, that he had not had his medication while incarcerated, and that he was hearing voices; counsel emphasized, however, that Terry understood the proceedings and had been able to assist in his own defense. Counsel did not put on any defense evidence at the hearing. Based on the aggravated circumstances of the offense, the court sentenced Terry to the maximum total sentence of twelve years.

Terry's direct appeal was denied, and he did not appeal further. He then filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on May 5, 2005, raising claims that counsel was ineffective. (Record No. 051018). The court dismissed his petition by order dated December 1, 2005. Terry then filed his § 2254 petition, alleging that counsel provided ineffective assistance with regard to mental health issues at trial and sentencing.

II.

Terry has exhausted his state court remedies, as he has presented his claims to the Supreme Court of Virginia or would be precluded from doing so if he now returned to state court. To the extent that the state court has adjudicated Terry's claims on the merits, this court must review those claims under the standards set forth in 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). This section reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). Section 2254(e)(1) requires a federal reviewing court to presume that the state court's determination of a factual issue is correct unless the petitioner offers "clear and convincing evidence" rebutting that determination.

The Sixth Amendment mandates that an accused person have the assistance of counsel sufficiently competent to fulfill the role of counsel in the adversarial system as necessary to ensure a fair trial. Strickland v. Washington, 466 U.S. 668, 685 (1984). To prevail in a claim that counsel provided ineffective assistance leading to petitioner's guilty plea, petitioner must show (1) that

3

counsel's performance was deficient, id. at 687, and (2) that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985); Ostrander v. Green, 46 F.3d 347, 355 (4th Cir. 1995), overruled on other grounds by O'Dell v. Netherland, 95 F.3d 1214 (4th Cir. 1996). Although the Hill prejudice question is subjectively phrased, the court must engage in objective analysis to reach an answer. Ostrander, 46 F.3d at 355. From the perspective of a reasonable defendant in the same circumstances as petitioner, the court must consider such objective factors as the strength of the government's case versus the strength of the defense case and any sentencing benefit received through the plea bargain versus the possible penalty to which the defendant would have been subject if convicted after a trial. Id. at 356. To show prejudice from an alleged error by counsel related to sentencing, petitioner must show a reasonable probability that absent the error, the outcome would have been different. Strickland, 466 U.S. at 694-95.

III.

Terry first argues that given counsel's knowledge of Terry's schizophrenia and other mental health issues, counsel should have investigated defenses regarding Terry's competence at the time he entered the plea and/or his sanity at the time of the offenses. The Supreme Court of Virginia rejected this claim because Terry stated under oath at the plea hearing that counsel's representation had been adequate.

The court cannot find that the state court's disposition of this claim was unreasonable under federal law. A guilty plea is valid if it is "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238 (1969). The defendant's declarations in open court at the plea hearing carry a strong presumption of verity that cannot be rebutted by conclusory allegations supported only by contentions that in the face of the record are wholly incredible. Blackledge v. Allison, 431 U.S. 63 (1977). Under federal law, a defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he

4

has rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960). Virginia has adopted the two prong M'Naghton rule

> that to establish a defense on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.

Price v. Commonwealth, 323 S.E.2d 106, 109 (1984)(citations omitted). Where a Virginia criminal defendant knows the nature of his act and that it is wrong, he may still prove an insanity defense under the "irresistible impulse doctrine" by showing that "his mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act." Thompson v. Commonwealth, 70 S.E.2d 284, 292 (1952).

Counsel stated his belief that Terry understood the March 2004 proceedings, and Terry himself stated under oath to the court that he understood the charges and the consequences of his plea. Terry's past mental health problems or even his hearing voices around the time of the accident or the trial do not, without more, undermine the veracity of statements Terry and his attorney made to the court at the plea hearing, indicating Terry's competence. The only evidence of insanity or incompetence that Terry submits now is a report from a mental health expert who examined him during the North Carolina proceedings in 2005. The report indicates that Terry is likely mentally retarded and has continuing hallucinations that little men are out to get him.[2] Neither this report nor any of Terry's other submissions indicates that counsel in the Virginia proceedings had reason to believe that Terry was incompetent to enter a guilty plea on March 4, 2004, or that additional investigation would have discovered viable evidence of his incompetence. Similarly, nothing in the record indicates that counsel knew facts putting him on notice that Terry's mental problems were so severe that he did not know his acts were wrong or acted under irresistible impulse so as to support an insanity defense under Price or Thompson. The court can find neither defective

---

[2] Respondent presents evidence that the only mental health professional who testified on Terry's behalf on the competency issue in North Carolina stated that Terry was in fact sane at the time of the offense. (Tr. 2-18-2005 at 62). Ultimately, the North Carolina court ruled that Terry was competent to stand trial. (Id. at 112).

5

performance nor any reasonable probability that a different trial strategy based on mental defect would have altered the outcome. Thus, the court cannot find the state court's disposition of this claim was contrary to, or an unreasonable application of, federal law, and will grant the motion to dismiss.

Terry also argues that counsel was ineffective in advising him that he would receive only a four-year sentence if he pled guilty. The Supreme Court of Virginia dismissed the claim, finding neither defective performance nor prejudice here, based on the plea hearing. As stated, the trial court clearly advised Terry that he faced a maximum of twelve years in prison on the charges to which he was pleading guilty, and Terry indicated that no one had promised him anything in connection with the guilty plea. Terry was sentenced within the statutory range of which he was advised. As he offers no reason to find his current assertions to be more credible than his statements under oath at the time of the plea, the court concludes that he offers no factual basis for this claim that counsel's advice was defective. Similarly, he offers no factual basis from which the court could find any reasonable probability that absent counsel's advice about sentence length, Terry would not have plead guilty.[3] The state court's disposition of the claim was neither contrary to, nor an unreasonable application of, federal law; therefore, the court will grant the motion to dismiss as to this claim.

Terry next argues that counsel should have investigated and presented testimony from family members about his mental health problems that might have supported an insanity defense or a competency challenge or mitigated at sentencing. The Supreme Court of Virginia rejected this claim because Terry failed to identify these witnesses or the content of their testimony or to explain how their testimony would have made a difference in the outcome. The court also noted that counsel reasonably believed Terry was able to understand the proceedings and to communicate with counsel about his defense. Thus, counsel reasonably determined that no investigation of insanity or competence was warranted.

---

[3] The evidence against Terry was strong, thus subjecting him to a twelve-year sentence after conviction at trial, without the possibility of any sentence reduction for accepting responsibility.

6

This court cannot find the state court's disposition to be unreasonable. Terry does not offer the specific testimony that family members might have offered or indicate how this testimony would have supported either an insanity defense or a competency challenge. At sentencing, testimony regarding Terry's hallucinations about little men out to get him conceivably might have mitigated against the adverse effects of Terry's question at the accident scene, asking whether "they" were all dead. The prosecutor argued that these statements indicated a clear lack of remorse. Terry does not demonstrate, however, that counsel knew anything about these hallucinations or had any other reason to believe that family members' testimony might explain Terry's hurtful comments at the scene. Moreover, the trial court based Terry's sentences on the aggregated nature of the incident itself, on the deaths of innocent victims, and on the sentencing outcome in another case, in which a jury recommended five year sentences on each count of eluding police and driving after being declared a habitual offender, second offense, even though no one was injured or killed as a result of the defendant's behavior in that case. Terry has not shown that counsel acted unreasonably in failing to investigate family members as witnesses or demonstrated how their testimony could have counteracted the court's conclusions at sentencing. Thus, Terry cannot show prejudice under Strickland, and the court must grant the motion to dismiss.

For the reasons stated, the court concludes that the motion to dismiss must be granted. An appropriate order shall be issued this day. The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253( c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, the court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 30 days of the date of entry of

this opinion and the accompanying final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This 5th day of January, 2007.

/s/ James C. Turk
Senior United States District Judge